NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 15-10512 |
| Plaintiff-Appellee, | D.C. No. 3:14-cr-08073-DGC-1 |
| v. | |
| CORBERT GOLDTOOTH, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
David G. Campbell, District Judge, Presiding

Submitted December 14, 2016[**]
San Francisco, California

Before: O'SCANNLAIN, GOULD, and M. SMITH, Circuit Judges.

Corbert Goldtooth appeals his second-degree murder conviction and prison

sentence. He challenges the sufficiency of the evidence, the denial of his motion to

suppress his confession, and the denial of his requested downward departures at

_____

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

sentencing. We affirm the district court.

The Government was required to prove beyond a reasonable doubt that Goldtooth killed Virgil Teller, with malice aforethought, not acting in reasonable self-defense, in the Navajo Indian Reservation in the District of Arizona, and that Goldtooth was an Indian. 18 U.S.C. §§ 1111(a), 1153. Goldtooth contests the sufficiency of the evidence on malice aforethought and self-defense. "Evidence is sufficient to support a conviction unless, viewing the evidence in the light most favorable to sustaining the verdict, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Green*, 592 F.3d 1057, 1065 (9th Cir. 2010).

To establish malice aforethought, "the government must prove that the defendant killed intentionally or recklessly with extreme disregard for human life." *Kleeman v. U.S. Parole Comm'n*, 125 F.3d 725, 731 (9th Cir. 1997) (internal quotation marks omitted). The absence of malice may be shown by evidence that "some extreme provocation, beyond what a reasonable person could be expected to withstand, severely impaired [the defendant's] capacity for self-control in committing the killing." *United States v. Quintero*, 21 F.3d 885, 890 (9th Cir. 1994).

Goldtooth argues that he acted in the heat of passion after Teller attacked Goldtooth's adult son, Gage Goldtooth. Viewing the evidence in the light most

favorable to the prosecution, we cannot say that no rational jury could have found that Goldtooth killed with malice aforethought. Goldtooth went to Teller's house at night with weapons and other gang members in order to confront Teller about a gang conflict, then stabbed Teller sixteen times and left him to die. Goldtooth made no effort to get Teller assistance, abandoned the murder weapon, destroyed evidence, and lied to the police about the murder. His calculated behavior shows that he was capable of committing murder with malice aforethought.

"Use of force is justified when a person reasonably believes that it is necessary for the defense of oneself or another against the immediate use of unlawful force. . . . Force likely to cause death or great bodily harm is justified in self-defense only if a person reasonably believes that such force is necessary to prevent death or great bodily harm." *United States v. Keiser*, 57 F.3d 847, 851 (9th Cir. 1995) (quoting model jury instructions); *see also id.* (affirming that the model jury instructions accurately state the elements of self-defense in this circuit).

Goldtooth argues that he stabbed Teller in reasonable self-defense to protect Gage and himself from death or great bodily harm. Viewing the evidence in the light most favorable to the prosecution, we cannot say that no rational jury would have found that Goldtooth was not acting in reasonable self-defense. Gage's injury was not life threatening, but Goldtooth responded with deadly force. The jury could have reasonably concluded that Goldtooth responded with more force than

3

reasonably necessary under the circumstances, or that Goldtooth's account of Teller's alleged provocation was not credible.

Admission of a defendant's involuntary statement violates due process, and a statement may be involuntary due to psychological coercion. *United States v. Miller*, 984 F.2d 1028, 1030 (9th Cir. 1993). "[I]n extreme cases, appealing to a defendant's moral obligation to his or her family as leverage to coerce [a confession] is unconstitutional," *Ortiz v. Uribe*, 671 F.3d 863, 872 (9th Cir. 2011), such as when a defendant's ability to see his children is conditioned on cooperation with questioning in a coercive environment. *See, e.g.*, *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963); *Brown v. Horell*, 644 F.3d 969, 980–81 (9th Cir. 2011); *United States v. Tingle*, 658 F.2d 1332, 1336 (9th Cir. 1981). However, it is permissible to make psychological appeals to a defendant's conscience, including to his moral obligations to his children, which do not rise to the level of coercion. *Ortiz*, 671 F.3d at 872.

Goldtooth argues that his confession was involuntary because he confessed only after the FBI agent mentioned his son Gage. Goldtooth consented to the interview, waived his *Miranda* rights, and was experienced in the criminal justice system. Although the agent implied that Gage was a suspect, and appealed to Goldtooth's desire to protect his son, the questioning was well within the permissible psychological techniques we recognized in *Ortiz*. *Id.* Questioning a

4

suspect about an adult and fellow gang member who is a legitimate suspect is materially different than mentioning a defendant's child for coercive purposes when the child has nothing to do with the suspected crime. *See, e.g.*, *Tingle*, 658 F.2d at 1336.

Goldtooth argues that his sentence is substantively unreasonable because the district court denied two requests for downward departures: acceptance of responsibility and victim conduct. "[W]e review . . . the district court's application of the Guidelines to the facts of the case for abuse of discretion. . . . If the district court correctly calculated the Guidelines range, we then review the sentence for reasonableness." *United States v. Dallman*, 533 F.3d 755, 760 (9th Cir. 2008).

United States Sentencing Guidelines § 3E1.1 allows for a downward departure of two levels when "the defendant clearly demonstrates acceptance of responsibility for his offense." Goldtooth argues that he accepted responsibility because he admitted to the crime and testified truthfully at trial. However, it was reasonable for the district court to deny this departure, given that Goldtooth went to trial to challenge his responsibility for the killing, destroyed evidence, disposed of the weapon, and lied to investigators before admitting the truth.

United States Sentencing Guidelines § 5K2.10 provides for downward departure when "the victim's wrongful conduct contributed significantly to provoking the offense behavior." Goldtooth argues that Teller's conduct should

5

have justified a downward departure because Teller swung a machete at Goldtooth and Gage. Although Goldtooth's account of the events implicated Teller for provoking the attack, the district court did not find Goldtooth's version of events credible. We "give[] special deference to the district court's credibility determinations," *United States v. Nelson*, 137 F.3d 1094, 1110 (9th Cir. 1998), and conclude that it was reasonable for the district court to reject Goldtooth's account of Teller's behavior. Overall, the district court's in-Guidelines sentence of 360 months was reasonable given the circumstances of the crime and Goldtooth's criminal history.

We AFFIRM the district court.